Good morning, judges. My name is Wayne Johnson. I represent the plaintiff in this case, who's the appellant. Is he with you in court today? Is your client here today? My client, Mr. Turner. Thank you. I'd like to remind the Court that the standard review on legal issues is de novo in this case, so you can look at all the issues fresh. What I would like to talk about is the first judgment, which is the motion to dismiss the Court. Threw out basically most of the plaintiff's case before we got to the summary judgment. But once we got to the summary judgment, she looked at the facts again and decided that if she had known the facts, she might have decided otherwise, but the pleadings weren't sufficient for her at that time. But I would like to approach the Court on the Iqbal case, which I believe is not really applicable in this particular matter, because of the Dubner case, the Dubner v. San Francisco case. In that case, what the Court stated was, basically the Iqbal case stated if you have the burden of proof at the trial level, you have this higher burden at the pleading stage, proving your case. The Dubner case holds that in the case of probable cause, that once the plaintiff makes an initial showing that his stop was unreasonable, the burden would shift over to the people in that case or the State. So the plaintiff's burden would be a little bit less than in the Iqbal case. Now I want to proceed on to the summary judgment issue. Basically what the Court held was there were a number of facts that it looked at in deciding that she could see why a police officer could make a mistake as to whether there was probable cause to arrest Mr. Turner.  as to whether there was probable cause to arrest Mr. Turner. And do I understand correctly, counsel, that your client does not challenge the initial stop and search? My client is not challenging any of the search and any of the stop. He's only challenging the arrest, because basically what they did was they stopped the vehicle, pulled the driver out. The driver had less than an ounce of leafy substance rolled up in his pocket, and he had some seeds in his backpack, which was in a medicine bottle. And none of that was associated with Mr. Turner, and the police never alleged that it was associated with Mr. Turner. But basically they continued on with the search, as you know, and they looked in the glove compartment, and they found this vial of a clear substance. Now, this is the problem with that. First of all, the probable cause determination, what they did was they bootstrapped Mr. Turner to Mr. Lewis, which was highly unreasonable, because in those cases where they did that, there was either some significant amount of cash in the vehicle or some other contraband. There was none of that in this case. There was no reason to believe Mr. Turner would even know that Mr. Lewis even had any sort of contraband in his pocket. And the amount, even if he did know it, it would be indicative of a personal situation used for Mr. Lewis only. So I think that bootstrap argument is problematic. Well, the oil was in, what, in the glove compartment? Glove compartment. The glove compartment is normally on the passenger side? Yes. We have no problem with that. Okay. Okay. So why is there no reason to suspect your client? Of the oil or the leaf, the leafy substance? The leafy substance was in Mr. Turner's pocket. I understand that. It was in his pocket, so he wouldn't know that any of that existed. He's not denying that he knew about the oil. And he's claiming ownership of the oil. He's just saying this oil didn't look anything, didn't resemble anything, and it looked like contraband or concentrated cannabis or hashish oil, and there was no reason to believe that. And even the district court noted that the officers had no experience in determining what that substance was. And what they could have done was a lot of things that they didn't do. But what they did do was look at this drug ID booklet, which I'm assuming they use in their business, but that drug ID booklet was vague and it didn't have enough details in it to even make an assessment as to whether he had concentrated cannabis. It basically said you have a thick, viscous, and golden-colored substance, and that's all. It didn't say anything about the touch, the smell. And it also, what's ignored in this case is there's two photographs of different types of concentrated cannabis. One of them is Middle Eastern. It's unlikely Mr. Turner would have Middle Eastern. But there's also the domestic, which had a significant amount of residue in it. If you look at the comparative photographs of what was in that booklet to the photograph of the oil that Mr. Turner supposedly had, it looks nothing alike. Basically, Mr. Turner was alleging that this is his anointing oil or his blessing oil, and basically it's common knowledge that many times churches use olive oil, and no doubt that's probably what that was. And going further into the case, we more than likely could have proved that that's olive oil and it looks nothing like that. But that general ---- How is this case affected by the fact that your client was on parole? Wasn't he on a parolee status at the time that this occurred? Absolutely correct. And so it looks like you're challenging it on both fronts, but I want to make sure. I'm challenging it based on the parole front and also without parole. Okay. Without parole, that there was a probable cause to arrest him. And then how about on parole? There's a reason ---- there's still a standard. There's a reasonable ---- he has to be doing some conduct. They don't just punish parolees for nothing. And basically this is what happened in this case. And the district court admitted that, but she said it was just a bad ---- it was a bad scenario because she wanted to, you know, give the officers some on-scene leeway. And I want to address the point of the on-scene leeway in this case really quickly too before I ---- But is there clearly established law? I just want, because your time is limited, is there clearly established law on what the police officers, what amount of suspicion was required since he was on parole status? I believe you can argue that there's ---- there has to be some reason. There has to be some reason. And so if it is reasonable, you're challenging whether reasonable ---- you're saying either under probable cause or reasonable suspicion, law enforcement didn't have a basis to basically turn him over to the county and then have the ---- that's what you're challenging, right? The parole authority. And they submitted a false document to the parole authority. They didn't say we suspect Mr. Turner had concentrated cannabis. They wrote on that report he had concentrated cannabis. And if I were a parole authority person and I read that, I would hold him to. But if I read the report, which they didn't provide until many days later, and even there was a memo going from ---- How many days later did the report surface that it didn't ---- We have no idea because there's a memo from the parole authority that's three days later that states we still haven't had the report. So we don't know when they actually got it. We just know 11 days later he was released. But he was being held though. I mean, the police officer, I mean, I think there's a real problem, it seems like, that your client was in custody for 11 days. It just looks like once the officer, on that day when he felt like he had either reasonable suspicion or enough suspicion, based on his parolee status and also based on what he found there looking at everything in totality, he hands him over or writes up the papers and then he's put in jail on hold. And then apparently he's on hold by the authority of the California Department of Corrections. Did you bring any suit against the California Department of Corrections? I don't believe it was their fault. I believe that the police submitted the proper information and a police report describing what they actually did, including going to the city of Berkeley, which is like seven, eight miles out of the way from the initial arrest. And I did want to address that on scene leeway situation, because that's one of the factors they use in deciding qualified immunity. In this particular case, the police department, the main headquarters was blocks down the street from this man's detention. They had all kinds of tools at their disposal at the police department. They could have gotten a better expert, someone who knew about concentrated cannabis. They could have gotten a better resource book. They could have actually tested the substance. It was a THC kit in a matter of seconds to determine if it had actually any marijuana in it. What they did was go to these other homes all over the city and in Berkeley, and they came up with nothing. That should have been a further indication that Mr. Turner wasn't involved in any type of criminal activity. But for purposes of qualified immunity, your position has to be that they were unreasonable in not testing this or in determining that they had reason to believe that this was cannabis oil. That and also the fact that they had no idea of what it was. And if they knew, if one of them had a suspicion for real as to what it was, that would be a different case. But they're admitting we don't know what this is. It's not like that dollar case where they had money, where the officers didn't know the difference between an old dollar and a new dollar, because at least they had some idea of what a dollar looked like. In this case, these guys ---- But they knew that there was cannabis in the ---- they knew that there was someone in the car who was in possession. Yes. And that was the driver, and that amount was so minimal, it has to be so significant to the case.   Thank you. Thank you. Okay. I have about 45 seconds. Can I reserve 45 seconds? Sure. Good morning. May it please the Court. I'm Chris Key, appearing for defendants. Let me ---- I would like to address the qualified immunity issue. I get the sense that the plaintiff is essentially conceding that the law was not clear as to whether the standard was reasonable suspicion or probable cause when a parolee was involved. And I believe that the correct standard is reasonable suspicion, but I think it's fairly clear based on the cases that we cited at some length in our brief in Section E1 that the law was not established. If it was established at all, it was established that the standard was reasonable suspicion. What was the predicate for the pullover? I believe it was an expired registration. The car was registered in Mr. Turner's name, and it was an expired registration. So that was the initial stop. The officer, I believe, asked ---- Is that little sticker up in the corner of the license plate? I believe that's correct. I'm ---- I don't think it was one of those ones where you have the larger sticker on the rear windshield. I believe it was the small sticker on the license plate. About the size of a postage stamp. That's correct, Your Honor. And this officer saw this from ---- I believe the record ---- it's in his police report, which is ---- it's at pages 113 to 124 in the excerpts of the record. I believe that he ---- they drove by the car. They noticed that the ---- he did notice that it was ---- didn't match the month or the year, and then pulled the car over at that point. Did they ask who the owner of the car was? They did, Your Honor. And they got registration material? I don't recall that from the record, if they did or not. I believe that the ---- Mr. Turner might have said the car was registered in his name. And then the officers asked, as they often do, routinely do, if the ---- if they were on parole, and they answered yes, and then the matters proceeded from there. Okay. The plaintiff's ---- I mean, defendant's ---- plaintiff's position is evidently that there were not, regardless of the standard of review, that there were not sufficient facts, objective facts, to support the arrest. Again, I would cite to the record here that's a hard argument to make, given the detailed report based on objective facts and conclusions that the officers drew from those objective facts that are in the record, specifically Officer Turner's incident report, which is at pages 116 to 119 in the record. He repeats those in his declaration, which are at 132 to 137. The important point to take from the objective facts was the totality of the circumstances, which is the standard in ---- regardless of whether it's reasonable suspicion or probable cause. The officers seized this vial, correct? That's correct. And took it for analysis? They submitted it to the crime lab once they brought Mr. Turner to the police department. Okay. And when was it turned over to the crime lab? Based on the arrest report, I think immediately. Okay. And when did the report come back that it was not a controlled substance? There ---- apparently the testing was not done for some time. Mr. Johnson brought a motion to have the results turned over. It's not clear from the record, to me at least, when the test was actually done. There's nothing in the record to show that? There are declarations that are court records that Mr. Johnson may be able to answer that question better than I. There are papers from the superior court referring to the process by which Mr. Johnson was able to obtain the testing records. So he had to ask for them? Yes, because I believe that the investigation was ---- had not technically been closed. There's a reason for this, Your Honor, but unfortunately, it happened after all these events took place. And I'm uncomfortable inserting information into the record that was not before the Court and is not technically before this Court. Who ---- can you tell me who was responsible for testing and delivering that information, the results to ---- Once the Oakland Police Department turned Mr. Turner ---- remanded Mr. Turner into the custody of the CDC, its null OPD had nothing further to do with the case. That was the Corrections Department? That's correct. With the Corrections Department and the Parole Department. Once the police officers turned the prisoner over to the second chain in the custody of the prisoner, its null ---- they have nothing further to do with the ---- So they could have taken the vial back to the police station and set it on the desk and waited for a month? Well, it was no longer Oakland's responsibility. The police, the only people we have here, the defendants here is Oakland Police, right? That's correct. If ---- I don't want to move away from this particular line of inquiry, but this raises an important point in the qualified immunity analysis, which is the jurisprudence requires that the constitutional right be defined with great specificity. In the motion for summary judgment, the constitutional right that was at issue was the duration of the detention. Why Mr. Turner was held for so long? On this record, Oakland Police Department did ---- had nothing to do with that. They asked for the parole hold on the basis of the evidence, the police ---- the evidence that is in the record. And at that point, their responsibility and authority even to have any control over the duration of the detention is gone, is removed. So in terms of the specific constitutional injury that is at issue in the motion for summary judgment, the Oakland Police have ---- they're out ---- they should technically be out of the case. And so let's go back, then, to whether or not your ---- give me your argument as to why there was reasonable suspicion here. When the police officers just had a bottle, they looked in the book that's called drugs or different types of drugs, that that was enough? Well, it was very much the totality of the circumstances. And once again, it's explained in considerable detail by Officer Turner in his crime report and in his declaration. What they ---- they took all these things together. There was a small amount of marijuana. There was a bottle with seeds in it. There was a picture of a marijuana plant. And then there was the vial of hashish oil. What the officer presumed based on that was that he may be in the presence of ---- that he may be involved with an illegal marijuana growing operation, which would tie all those things together, the seeds, the picture, and the hash oil. As he said in his declaration, hashish oil is often associated with illegal marijuana growing operations. So that was the totality of the circumstances that led him to believe that there was an illegal grow operation going on. Your position is that the proper standard to view the officer's behavior is reasonable suspicion. That's correct, Your Honor. What's the standard for the decision to incarcerate a person on parole hold? To incarcerate a person? Well, that is ---- Isn't it probable cause? Well, that's an ---- I believe that's an open question as well, because the under the ---- The parole officer under the law, under California law, have to have probable cause to believe that an individual has committed a crime before they can be put on parole hold in custody. That is the standard under California law. There are the provisions, the mandatory provisions, which are mandatory under 1525 12 of the Code of Regulations. Let's say if you commit a crime, you go, you can go back to jail. I would submit as a matter of the Fourth Amendment, it's not entirely clear what the standard is for returning a parolee to custody. Was it clearly established at the time of this stop and search that the officers were under a responsibility to provide complete and accurate information to parole authorities? I'm certain that that was, and that is they certainly did that on this record. Your opponent argued that they told him, told parole authorities that he had in fact had drugs in his possession, not that they suspected it. There's nothing in the record that would support that. There is what he told them, presumably, no one knows what he actually told them over the telephone when he called them up, but the information that should have gone to the parole people, the parole and the center for, I mean, the corrections officials is contained in the incident report. And once the Court reviews that, I think you'll, it's hard to reach the conclusion that it was not based on objective facts in the record. I've taken over your time. Thank you very much. Go ahead. Really quickly here, Judges, there is some documents in the excerpts of the record. One of them is page 145 where it states the information relayed to the parole authority was that Mr. Turner did in fact have hashish oil, not a suspected hashish oil. And it's all throughout other documents in the case. I'd also like to point out that they never analyzed the concentrated cannabis in the record. There's documents in the record, in the trial court record. Basically, I had to file a motion to get the drugs tested because they had never tested them. They only had tested the leafy substance, which was in Mr. Lewis's possession. And then also I'd like to point out, Your Honors, that on top of the situation there was a car full of groceries. It didn't indicate any type of grow operation taking place. These guys were going, coming from, returning from the grocery store with $100 worth of groceries inside the cab of the vehicle. Thank you very much. Both of you for your presentation today. The case is now submitted.
judges: Schroeder, Hawkins, Murguia